**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JEFFERY LONG
ADC # 117341                                                                                          PLAINTIFF

v.                              CASE NO.: 1:07cv00026 SWW/BD

ERIC HOLOWELL, et al.                                                                           DEFENDANTS

**RECOMMENDED DISPOSITION**

**I.**     **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If an objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date you receive the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A-149
>   Little Rock, AR 72201-3325

**II.     Introduction:**

Now pending is Defendants' Motion for Summary Judgment (#140).  Plaintiff has responded (#144, 145, 148).  For the following reasons, the Court recommends that the Defendants' Motion for Summary Judgment (#140) be GRANTED.

**III.    Background:**

After numerous amendments and dismissals, the only claims that remain in this lawsuit are: (A) a claim against Defendant Baird in his individual capacity for deliberate indifference in failing to protect Plaintiff; and (B) a claim against Defendant Meinzer in his individual capacity for separating Plaintiff from another inmate based on race.

On the evening of November 19, 2006, Correctional Officer Holowell cited Plaintiff for a disciplinary violation.  Defendant Baird was the shift supervisor that evening, and reviewed the disciplinary.  After talking to both Officer Holowell and Plaintiff, Defendant Baird decided to place Plaintiff in isolation pending disciplinary court review.

The isolation cells at the North Central Unit ("NCU") of the Arkansas Department of Correction ("ADC") are two-man cells.  Plaintiff was assigned to a cell with inmate Antwone Nichols.  Inmate Nichols was in isolation for the same charge as Plaintiff, insolence to a staff member.  Plaintiff and Nichols did not previously know each other and had never had any disputes or altercations (#143, Ex. 2, 3).  According to Plaintiff's complaint, Nichols made lewd comments and sexually propositioned Plaintiff, touched

Plaintiff's clothed buttocks, and masturbated in front of Plaintiff over the next couple of days. On November 23, 2006, Plaintiff complained to Sergeant Peppers about Nichols' conduct. After reporting Nichols, Plaintiff was moved to a different cell and Nichols was charged with a disciplinary violation. Nichols was placed on Plaintiff's separation list, and eventually, on his enemy alert list.

The NCU has two primary tools for separating inmates who may pose a threat to each other: separation status and enemy alert. Inmates on separation status at the NCU are not housed in the same barracks, but may be housed in the same end of the unit, and may have chow, recreation, and other activities at the same time. Inmates listed as enemies cannot be housed in the same end of the unit, and cannot attend recreation functions or work together.

On June 5, 2006, Plaintiff was caught passing a note to Inmate Parsons (#143, Ex. 8). The note made it clear that Plaintiff and Parsons were involved in a sexual relationship. Plaintiff readily admits that he and Parsons were sexually and emotionally involved. On June 6, 2006, Defendant Meinzer requested that Warden Banks approve the placement of Plaintiff and Parsons on separation status to discourage their relationship (#143, Ex. 8). On June 7, 2006, Warden Banks approved placement of Plaintiff and Parsons on separation status.

On July 11, 2006, a notebook titled "Book of Emotion" was seized from inmate Maust after Maust complained that Parsons and another inmate assaulted him. Plaintiff

admits that the book contained writings between Plaintiff and Parsons about their relationship. Plaintiff also admits that some of the writings reference potential violence against romantic rivals (#143, Ex 9, p. 143; Ex. 10, p. 78).

On February 20, 2007, Nichols was mistakenly moved to the same side of the NCU as Plaintiff. Although not in the same barracks, Plaintiff and Nichols should have remained on opposite ends of the NCU based on enemy status. On February 22, 2007, Plaintiff complained about Nichols' placement on the same side of the unit as Plaintiff. On the same day, Parsons claimed for the first time that he and Nichols were enemies. Parsons denied being involved in any incident with Niclols, or feeling threatened by Nichols. Based on timing of this request, and the lack of an explanation for it, Defendant Meinzer believed that Plaintiff and Parsons were attempting to manipulate barracks assignments by falsely claiming enemies. Because the NCU has only two ends, having Nichols on both Plaintiff's and Parsons' enemy lists would result in housing Plaintiff and Parsons on the same end of the NCU. In order to prevent placement of Plaintiff and Parsons in close proximity, Defendant Meinzer moved Plaintiff to the other end of the NCU, placed Parsons in isolation, and recommended upgrading Plaintiff's and Parsons' statuses from separation to enemy (#143, Ex. 8-E).

On March 1, 2007, Plaintiff discovered that inmate Parsons was on his enemy alert list. Plaintiff alleges that Defendant Meinzer has "misused his power and position for his

own personal agenda" in placing inmate Parson on the enemy alert list.  According to Plaintiff, this is based on his "sexuality as a homosexual and [having] a white partner."

IV.   Discussion:

Plaintiff alleges that Defendant Meinzer separated Plaintiff from inmate Parsons based on race and that Defendant Baird was deliberately indifferent in failing to protect Plaintiff from the assault by inmate Nichols.  Plaintiff has failed to support his allegations and Defendants are entitled to judgment as a matter of law.

   A.  Equal Protection:

The Equal Protection Clause of the Fourteenth Amendment prohibits states from intentionally discriminating against individuals based on race. *Shaw v. Reno,* 509 U.S. 630, 642, 113 S.Ct. 2816 (1993).  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 194, 123 S.Ct. 1389 (2003) (citation and internal quotes omitted).  "The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir. 1990).

In the present case, Plaintiff has not identified any race-based classification system by which Defendant Meinzer chose to separate homosexual couples.  Plaintiff also has not shown that he was treated differently from similarly situated inmates.  See *Rouse v.*

*Benson*, 193 F.3d 936, 942 (8th Cir. 1999) (holding that equal protection analysis begins by asking whether inmate has shown that he has been treated differently than others similarly situated). Plaintiff's claim rests on the allegation that Parsons was placed on Plaintiff's enemy alert list because Plaintiff is black and Parsons is white. The Court is hard pressed to find any support for this allegation.

Defendant Meinzer states that he separates inmates based on evidence of homosexual activities, not race. Defendant Meinzer has separated white, black, and mixed couples (#143, Ex. 8, p. 7-8). Defendant Mienzer states that most couples placed on separation status are never upgraded to enemy alert because no further evidence of homosexual activity between the inmates is discovered. In one other case, an inmate couple was placed on enemy alert after a physical altercation (#143, Ex. 8). In the present case, Defendant Meinzer believed that Plaintiff and Parsons were continuing to pursue their relationship by attempting to manipulate barracks assignments so as to be closer to each other (#143, Ex. 8).

To survive summary judgment, Plaintiff must identify affirmative evidence from which a jury could find proof of a racially discriminatory motive. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (citing *Crawford-El v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584 (1998)). Plaintiff testified that he believed Defendant Meinzer placed Plaintiff and Parsons on each other's enemy list based on the "Book of Emotion," letters, and other information (#143, Ex. 9, p. 141). In addition, Plaintiff testified that he did not believe

6

that race was the main focus of Defendant Meinzer's decision (#143, Ex. 9, p. 142). Instead, Plaintiff stated that Defendant Meinzer placed Parson on Plaintiff's enemy alert list due to a personal grudge. Defendant Meinzer never said anything to Plaintiff to make him believe that race had any impact on Defendant Meinzer's actions (#143, Ex. 13, p. 113-114, 116). Further, Plaintiff stated that his primary complaint was that Parsons was listed as Plaintiff's enemy when Parsons was not an enemy (#143, Ex. 13, p. 117).

In response to the motion for summary judgment, Plaintiff stated that while in isolation, Defendant Meinzer failed to keep Plaintiff and Parsons from talking to each other at yard call and occasionally showering at the same time (145-2, p. 2). Plaintiff's allegation provides support for Defendant Meinzer's decision to upgrade Plaintiff and Parsons' status to enemy alert lists. As Defendant Meinzer stated, he was concerned that Plaintiff and Parsons were still pursuing their relationship.

It is uncontroverted that Defendant Meinzer had the authority to separate Plaintiff and Parsons to discourage their sexually and emotionally charged relationship. The undisputed facts in this case, along with Plaintiff's deposition testimony and responses, do not support a cause of action for violation of Plaintiff's right to Equal Protection. See *Klinger v. Dept. of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994) (holding that inmate bringing equal protection claim must show intentional or purposeful discrimination). Accordingly, the Court recommends dismissal of this claim with prejudice.

### B. Failure to Protect:

It is established law that prison officials have a duty to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). Claims of failure to protect are governed by a "deliberate indifference" standard. "[D]eliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Ambrose v. Young,* 474 F.3d 1070, 1076 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 835 (1994)). Of course, not every injury "suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977. The duty to protect requires only that prison officials "take reasonable measures to abate substantial risks of serious harm, of which the officials are aware." *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995).

Claims under the Eighth Amendment include both an objective and a subjective element. The objective element requires a showing that the prisoner was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective component requires a showing that prison officials were "deliberately indifferent" to the risk of harm. *Id*. Deliberate indifference exists only where "the official knows of and disregards an excessive risk to inmate health or safety; the official

8

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

In this case, Plaintiff has not shown either the objective or subjective requirements of a failure to protect claim. Plaintiff testified that he had no reason to believe Nichols would harass or assault him before they were placed in the same cell (#143, Ex. 3, p. 19). It is difficult to see how Defendant Baird could or should have known of a risk that Plaintiff himself was not aware of. Nichols had no inmates on his separation or enemy list, had not committed any sex offenses, and did not have a record of institutional violence. As soon as Plaintiff told a NCU staff member about Nichols' conduct, the staff moved Plaintiff to another cell and charged Nichols with a disciplinary violation (#143, Ex. 3, p. 29). Before leaving Plaintiff in the other cell, the staff asked both Plaintiff and the other inmate if they had any issue with the other. Both responded that they did not (#143, Ex. 3, p. 30).

Plaintiff responds to Defendants' arguments by asserting that Defendant Baird knew Plaintiff was a homosexual (#144, ¶ 24; #145-2, ¶ 8; #148, ¶ 8). This assertion might be relevant if Nichols had a history of assaulting homosexual inmates. The undisputed facts remain that neither Plaintiff nor Defendant Baird knew of a potential risk of harm to Plaintiff from Nichols. Nichols' history did not provide any cause for concern that an assault would occur. As soon as staff at the NCU were made aware of the assault by Nichols, Plaintiff was moved to another cell. Based on the undisputed facts,

9

Defendant Baird is entitled to judgment as a matter of law.  Accordingly, the Court recommends dismissal of this claim with prejudice.

## V.     Conclusion:

The Court recommends that Defendants' Motions for Summary Judgment (#140) be GRANTED and the claims against the Defendants be DISMISSED with prejudice..

DATED this 10th day of October, 2008.

_____
UNITED STATES MAGISTRATE JUDGE